1                IN THE UNITED STATES DISTRICT COURT

2                     FOR THE DISTRICT OF MARYLAND

3                          SOUTHERN DIVISION

4   UNITED STATES OF AMERICA,      ) CRIMINAL
                                   ) NO. TDC-18-631
5            Plaintiff,            )
                                   )
6   v.                             )
                                   )
7   SCOTT ANTHONY WILLIAMS and     )
    TAEYAN RAYMOND WILLIAMS,       )
8                                  )
             Defendants.           )
9
         TRANSCRIPT OF JURY TRIAL PROCEEDINGS - DAY 12
10        BEFORE THE HONORABLE THEODORE D. CHUANG,
          UNITED STATES DISTRICT JUDGE, AND A JURY
11          THURSDAY, MAY 11, 2023; 12:55 P.M.
                     GREENBELT, MARYLAND
12  APPEARANCES:

13  FOR THE PLAINTIFF:

14           OFFICE OF THE UNITED STATES ATTORNEY
             BY:  WILLIAM D. MOOMAU, ESQUIRE
15           BY:  LEAH B. GROSSI, ESQUIRE
             6406 Ivy Lane, Suite 800
16           Greenbelt, Maryland  20770
             (301) 344-4433
17                -and-
             OFFICE OF THE UNITED STATES ATTORNEY
18           BY:  MICHAEL C. HANLON, ESQUIRE
             36 S. Charles Street, Fourth Floor
19           Baltimore, Maryland  21201
             (410) 209-4800
20

21
    OFFICIAL COURT REPORTER:
22  Renee A. Ewing, RPR, RMR, CRR - (301) 344-3227

23      ***COMPUTER-AIDED TRANSCRIPTION OF STENOTYPE NOTES***

24

25

```
 1   APPEARANCES (Continued):

 2   FOR THE DEFENDANT SCOTT A. WILLIAMS:

 3           THE HAWKS FIRM
             BY:  KWASI L. HAWKS, ESQUIRE
 4           8705 Colesville Road, Suite 162
             Silver Spring, Maryland  20910
 5           (310) 430-5577
                   -and-
 6           LAW OFFICE OF DWIGHT CRAWLEY
             BY:  DWIGHT E. CRAWLEY, ESQUIRE
 7           1300 I. Street, NW, Suite 400e
             Washington, DC  20005
 8           (202) 580-9794

 9   FOR THE DEFENDANT TAEYAN RAYMOND WILLIAMS:

10           LAW OFFICES OF ALFRED GUILLAUME III LLC
             BY:  ALFRED GUILLAUME, III, ESQUIRE
11           1350 Connecticut Avenue NW, Suite 308
             Washington, DC  20036
12           (202) 321-0549
                   -and-
13           LAW OFFICE OF CHRISTOPHER C. NIETO, LLC
             BY:  CHRISTOPHER C. NIETO, ESQUIRE
14           1 North Charles Street, Suite 1301
             Baltimore, Maryland  21201
15           (410) 863-8189

16

17

18

19

20

21

22

23

24

25
```

1          (Call to order of the Court.)

2          THE COURT:  Thank you, everyone.  Please be seated.

3          THE DEPUTY CLERK:  The matter now pending before this

4    Court is Criminal Action No. TDC-18-0631, United States of

5    America vs. Scott Anthony Williams and Taeyan Raymond Williams.

6    We are here today for the purpose of a jury trial.

7          Counsel, please identify yourselves for the record.

8          MS. GROSSI:  Good afternoon, Your Honor.  Leah

9    Grossi, Michael Hanlon, and William Moomau on behalf of the

10   United States.  Here with us at counsel's table is Kyle Simms

11   with the Maryland State Police.

12         THE COURT:  Good afternoon.

13         MR. HAWKS:  Good afternoon, Your Honor.  Kwasi Hawks

14   and Dwight Crawley on behalf of Mr. Scott Williams, seated

15   between us.

16         MR. CRAWLEY:  Good afternoon, Your Honor.

17         THE COURT:  Good afternoon.

18         MR. GUILLAUME:  Good afternoon, Your Honor.  For the

19   record, Alfred Guillaume and Christopher Nieto on behalf of

20   Mr. Taeyan Williams, seated to my left.

21         THE COURT:  Good afternoon to counsel.  Mr. Hawks.

22         MR. HAWKS:  Yes, Your Honor.  I apologize for

23   interrupting you.  In our haste to make it back to the

24   courtroom, we have left a full copy of our instructions

25   downstairs in the attorney conference area, and I ask that I be

1   momentarily excused to retrieve that quickly.  Mr. Crawley will

2   remain with the permission of Mr. Williams.

3           THE COURT:  I am not sure there is a better way, but

4   okay.  Yeah.  You can do that if you'd like.

5           MR. HAWKS:  Thank you.

6           THE COURT:  So welcome to the parties and members of

7   the audience.

8       So we have two questions that we have received from the

9   jury in close succession.  The first one is:  What exhibit

10  shows or expresses the net weight of the Schedule II

11  methamphetamine?

12      To me, this is a similar question to the one about what

13  exhibit number is the -- were the Wickr messages.  I do not

14  specifically recall if there is one exhibit that handles this

15  issue or whether it was just testimony.

16      So just as a factual matter, do you know, Ms. Grossi?

17          MS. GROSSI:  Yes, Your Honor.  It was just testimony

18  of Ms. Amber Burns.  There is no exhibit.

19          THE COURT:  And there is no, like, report that was

20  entered as evidence, just --

21          MS. GROSSI:  That's correct, Your Honor, yes.  Just

22  testimony.

23          THE COURT:  Okay.  So, given that, does anyone have a

24  proposal on how we respond to this question?

25          MS. GROSSI:  Your Honor --

1          MR. CRAWLEY:  Sorry.

2          MS. GROSSI:  Your Honor, the government suggests

3    referring them to Ms. Burns' testimony as a response.

4          THE COURT:  Mr. Crawley.

5          MR. CRAWLEY:  Your Honor, I would just say the

6    appropriate response would be:  There is no exhibit and your

7    recollection controls.  They were the fact finders in this case

8    so their recollection controls.

9          THE COURT:  Does the Taeyan Williams team have

10   another viewpoint?

11         MR. GUILLAUME:  We don't have another viewpoint, Your

12   Honor, but if we did, we would go with Mr. Crawley's

13   suggestion.

14         THE COURT:  So, it's interesting.  We don't usually

15   get questions like this even though it seems like they totally

16   are -- could be predicted.  As I mentioned to you before, I was

17   somewhat concerned, given the volume of exhibits, that

18   sometimes it's hard for the juries to find things because they

19   don't have the same indexing system that we all have.  So if

20   there had been an exhibit, I think I would, as we did with the

21   -- with the Wickr messages, would have considered doing that.

22         I think there is some difference, perhaps, between saying

23   we know there is an exhibit, just give us the number, versus

24   where in the evidence this piece of information is.  This

25   really falls more in the latter category, so I actually think

1  it would be a little bit tougher argument to say we should give

2  an exhibit number when they don't seem to have a description

3  they can give us and just asked for a number.

4      But then when we move to the layer of it being witness

5  testimony, which I think is more difficult, I think I would

6  probably -- I think the -- giving them a witness name is more

7  than I have done in the past in this scenario even though I

8  can't admit this comes up very often.

9      I think -- so I think perhaps a happy medium might be

10  something like:  No exhibit provides this information.  Your

11  recollection of the witness testimony, or you -- well,

12  something along the lines of what Mr. Crawley said, either just

13  noting that there is witness testimony out there but not saying

14  that it covers this or saying who it is, but just -- I think if

15  we say no exhibit, there is a risk they think that there is no

16  evidence of that, which obviously is -- it's up to them to

17  remember everything, but I think that might be a little unfair.

18  I think if we just say we are not going to tell you the number,

19  they might go sifting through for hours and not find anything,

20  and that's probably not productive.

21      So what if we said:  No exhibit provides this

22  information.  Your collective memory of the witness testimony

23  -- or, I mean, for lack of a better phrase right now, I could

24  say, Your collective memory of the witness testimony controls,

25  which is similar to what Mr. Crawley says.

1          Does anybody have a better or different phraseology they

2    would prefer?

3          MS. GROSSI:  Yes, Your Honor.  The government submits

4    that something to the effect of what Your Honor said -- maybe

5    not naming Ms. Burns -- but saying, The collective memory of

6    the testimony related to this subject controls.  To this -- I

7    mean, this subject was covered by her testimony, and so to not

8    address the subject, it kind of seems as though it wasn't

9    addressed in the testimony.

10          THE COURT:  Does anybody have any thoughts on that

11   from the defense side?

12          MR. CRAWLEY:  Your Honor, for simplicity reasons, I

13   would maintain the earlier position I took on behalf of

14   Mr. Scott Williams.  I think it's straightforward and direct

15   and it addresses everything that they have asked in this

16   particular question.  They asked specifically what exhibit.

17   There is no exhibit.  And to the extent that they need to rely

18   on their memory, that's all they can rely on, the information

19   that was presented to them.  So that's where we would stand on

20   that.

21          THE COURT:  Anything different from that,

22   Mr. Guillaume?

23          MR. GUILLAUME:  No, Your Honor.  I was going to say

24   we don't have anything to add.

25          THE COURT:  I think I am going to go with what I have

1   because, as Mr. Crawley said, the specific question was about

2   the exhibit.  If we really want to just strictly answer the

3   question only, we would just say there is no exhibit.  As I

4   said, that could be misleading or at least give them an

5   inference that maybe isn't accurate.  So I am willing to add

6   something else about testimony, but I don't think I want to go

7   any further.

8        As a practical matter, I think if we say, Your collective

9   memory of the witness testimony controls, they are going to

10  think about, Was there a witness who said this?  I don't think

11  -- and, obviously, they are going to focus on witnesses who

12  might have been in this range, so I don't think the addition

13  proposed by the government is necessary, and, again, trying to

14  keep it as limited as possible, I think I will stick with that.

15  So I will say, No exhibit provides this information.  Your

16  collective memory of the witness testimony controls.

17       As for the other note, it states, "The jury needs further

18  clarification on the law that states possession of a firearm(s)

19  [sic] combined with the possession of drugs over a certain

20  quantity of drugs automatically infers that the firearm is

21  being used in the furtherance of drug trafficking."

22       It's not really a question, but it does say they need

23  further clarification, and I think there is two issues in

24  there.  On the one hand, they are -- they are looking at the

25  question of whether possession of a firearm can -- you know,

1  whether there is -- the government has proven that the

2  possession of the firearm is in furtherance of drug trafficking

3  -- of the drug trafficking crime.

4       On the one hand, they are asking if there is additional

5  law to be brought to bear on this topic, and my initial

6  inclination is just to refer them back to the instruction that

7  covers the issue of in furtherance of a crime because while we

8  could get into sort of nuance situations, I don't think we have

9  -- first of all, I am not sure we have reached an agreement on

10  what the situation is that we need to address, but that the --

11  to the extent there is sort of specific doctrines relating to

12  this, nobody argued those, nobody really tried to assert that

13  there was a connection or asked for an instruction to show how

14  there might be a connection beyond just what we have in the

15  instruction, so I would tend to lean towards just saying, Look

16  at the instruction, I think it's on page 94, on this issue.

17       There is this other statement here about whether drugs

18  over a certain quantity automatically infer that the firearm

19  was being used in furtherance of the drug trafficking.  That

20  raises, to some degree, the possibility that they think there

21  is an automatic inference to be drawn.  I don't think anybody

22  would argue that there is anything automatic, although I think

23  we can still address both those issues in a balanced way by

24  just referring them back to the instructions, and the

25  instructions in no way infer that there is anything automatic.

1        So I think that's the cleanest thing to do, but I am

2   inviting both sides to weigh in.

3        MS. GROSSI:  Your Honor, the government agrees.  We

4   came up with four instructions to potentially refer them to:

5   Instruction No. 64, which talks about possession of a

6   controlled substance; Instruction 66, which talks about intent

7   to distribute; Instruction 83, which I believe is the one that

8   Your Honor has already mentioned, which is knowing possession,

9   use or carrying of a firearm --

10        THE COURT:  Sorry.  Give me the first two numbers

11   again.

12        MS. GROSSI:  Yeah.  Sure.  Instruction No. 64, which

13   is on page 69.

14        THE COURT:  Okay.  And then?

15        MS. GROSSI:  And then Instruction 66, which is on

16   page 72.

17        THE COURT:  Mm-hmm.

18        MS. GROSSI:  And then Instruction 83, which you

19   already referred to, which is page 94.

20        THE COURT:  Mm-hmm.

21        MS. GROSSI:  And then, just to be complete,

22   Instruction 90, which deals with the other 924(c) count and it

23   just really refers back, and that's at page 103.

24        THE COURT:  So you are suggesting that I say that --

25   in response to this, Please refer to or consult those

1    instructions?

2         MS. GROSSI:  Yes, Your Honor.

3         THE COURT:  Okay.  Any view from the defense on that

4    proposal or any other proposal?

5         MR. CRAWLEY:  Yes, Your Honor.  On behalf of

6    Mr. Scott Williams, we would take the position that the Court

7    not go beyond just merely referencing them back to the general

8    instructions as a whole and instruct them that they should read

9    the instructions as written; that meaning we would take the

10   position that there should not be any inferences drawn that are

11   not in the instruction.

12        I think what's happening here, and to your point, Your

13   Honor, as the Court touched upon earlier to the latter half of

14   this question, that doesn't even exist, so there is no

15   inference there.  So I think what they are doing is maybe some

16   people are -- and I don't want to disparage the jury -- but

17   some people may be acting as if they are somewhat experts in

18   this particular area of law and may be trying to inject some

19   theory that doesn't exist.  So if we limit it to just advising

20   them to stick with the instructions as written, it takes out

21   all of the ambiguity or lack of information that they believe

22   they may not have.

23        THE COURT:  So are you agreeing or disagreeing with

24   the government that we should reference particular instructions

25   as part of that, or do you just not want to reference any of

1  them?

2        MR. CRAWLEY:  I don't think we should focus any

3  attention on any specific instruction.  I just think we should

4  take the broad approach:  You have been provided with the

5  instructions.  The instructions are designed to provide you

6  with how you should look at the case and apply the law and that

7  there is nothing else here that would suggest that there is an

8  inference, so there is nothing in the law that supports that.

9        But if the Court didn't want to get into the latter part

10  of what I just stated, I would just say focus them on the

11  notion that you have the instructions, you should read the

12  instructions as they are written, and leave it at that, Your

13  Honor.

14        THE COURT:  So -- okay.  Mr. Guillaume, anything to

15  add to that?

16        MR. GUILLAUME:  No.  I think the cleanest way, I

17  agree with Mr. Crawley, is to just say, You have the

18  instructions, the law has been provided to you, and their job

19  is to interpret it.  I don't want to -- I don't think we should

20  be telling them where they should focus because who knows what

21  effect it may have on all three sides, for all three parties.

22        THE COURT:  Well, I mean, I wonder, just on that

23  point, I mean, I think particularly Instruction 83, which deals

24  with in furtherance, I mean, to some degree, if your point is

25  you want them to get the message that there is nothing

1    automatic, I think if you read 83, there is nothing in there

2    that's automatic.  If we don't focus them on at least that one,

3    then they are reading the whole thing looking for the

4    automatic, and, yeah, they probably won't find it, but, you

5    know, the more words they read, the more possibility that they

6    are like, Well, maybe there is something in here.

7         So if we focus them on the one that really is about this

8    issue and they can see what's there and what's not there,

9    wouldn't that be better, or do you still prefer the broad

10   approach?

11         MR. GUILLAUME:  I think -- I see the Court's point,

12   and I don't think you are wrong, Your Honor.  I just get very

13   nervous when we point to specific instructions over others

14   because who knows what emphasis is being given by whatever

15   factions are in the room in there.  But I do -- I see your

16   point.  I do think that answers the question more directly.  I

17   don't think we should even tell them there is no automatic --

18   nothing automatic for that same reason.  I just -- I am very

19   cautious when it comes to these things.

20         THE COURT:  So even though they have asked about

21   automatic, you don't -- you are not asking me to tell them that

22   there is nothing automatic here?

23         MR. GUILLAUME:  May I have the Court's brief

24   indulgence, Your Honor?

25         THE COURT:  Sure.

1          MR. CRAWLEY:  On behalf of Mr. Scott Williams, I am

2    just looking back over that instruction again, Your Honor.

3          MR. GUILLAUME:  I guess I am kind of caught between a

4    rock and a hard place here, Your Honor, on behalf of Taeyan

5    Williams.  I think that if you do tell them there is nothing

6    automatic, that stops that line of inquiry, but then if you

7    focus them on a particular instruction, that could potentially,

8    but not necessarily, be problematic, so I would want to consult

9    with my co-counsel before I make a definitive --

10          THE COURT:  Okay.  I mean, as I am reading the

11    instruction -- or the note again, it says, The jury needs

12    further clarification on the law that states possession of a

13    firearm combined with possession of drugs over a certain

14    quantity of drugs automatically infers, and one way to read

15    this is that that's their understanding is that there is an

16    automatic inference.  They just don't know where it is or how

17    that's defined.

18          MR. CRAWLEY:  And so the most direct answer from our

19    position is that there is no law that supports that.  If that's

20    our intent, to be as honest and direct with them, then that's

21    the appropriate response.

22          To the extent that the Court may not want to engage in

23    that kind of dialogue, then I don't think we should single out

24    other instructions because it still, to your point, doesn't

25    answer their question.  They are not going to get, from reading

1   these instructions, any law that speaks to this particular

2   question.

3            MS. GROSSI:  Your Honor --

4            THE COURT:  So I think I understand your position.

5        Ms. Grossi.

6            MS. GROSSI:  Your Honor, I just think this is a

7   simple question where we point them to the law that they are

8   supposed to follow which is in the instructions, and providing

9   them with a legal answer outside of the instructions is

10  potentially problematic.  So if we refer them to four different

11  instructions where they see the automatic is not listed, that's

12  going to be their -- you know, their interpretation of the law

13  is going to be based on these instructions.

14           THE COURT:  But what's wrong with saying there is

15  nothing automatic here?  Because they are not asking is there

16  an automatic inference.  They are saying, We want clarification

17  on the law that states that there is, you know, possession

18  combined with -- firearms combined with drugs over a certain

19  quantity automatically infers that's being used.

20           MS. GROSSI:  Your Honor, I think we are potentially

21  parsing out this note in an unfair way.  They are asking for

22  further clarification on the law with regard to possession of

23  firearms.  We don't know if they are, like, using this

24  automatically in the way that we are thinking automatic, and so

25  I think it's important to send them a note back to refer them

1   to the instructions both parties have agreed to.  That is the

2   law in this circuit on this particular count.

3        And Your Honor, just another point.  I don't know if they

4   are also talking about Chris Bush's testimony about weights

5   being over a certain amount and that being drug trafficking,

6   and so I think, you know, we could also add the point of also

7   testimony -- your collective understanding of testimony also

8   should be considered.

9        THE COURT:  Well, they are asking for a -- the legal

10   definitions.  They are not asking for guidance on the facts in

11   this question.  They were in the other question.

12        Mr. Crawley, you wanted to add something else?

13        MR. CRAWLEY:  Yes, Your Honor.  Again, if we take it

14   at its face value, it seems to be, in my opinion, asking for

15   something that doesn't exist.  If we just read it on its face

16   value, they are saying specifically, We need clarification on

17   the law that states these things.  There is no law that states

18   those things, so we don't have to make this complicated

19   because, to cut to the chase, the answer is there is no law

20   that states those things.

21        To the extent that the Court wishes to suggest that you

22   have the jury instructions and you should follow the jury

23   instructions, I believe, on behalf of Mr. Williams, that that's

24   the appropriate response.

25        MS. GROSSI:  Your Honor, I am also looking at

1  Instruction 83 where it is talking about quantity of drugs, and

2  so that's why we were -- I think it's important to refer them

3  to that instruction -- I'm sorry, Instruction No. 66, and then

4  in conjunction with Instruction 83, which are to be read

5  together with regard to possession and distribution.

6          THE COURT:  Mr. Guillaume.

7          MR. GUILLAUME:  Your Honor, just to clarify our

8  position, it's somewhat of a -- something very similar to

9  Mr. Crawley's.  Simply saying that there is no law that states

10 this proposition and then you have the instructions to follow,

11 without naming specific instructions, I think is the cleanest

12 and most safe way for us.  But I understand everything the

13 Court has said.  And I understand the government is saying what

14 they are saying, but I think it just makes it way more

15 confusing potentially to their deliberation.  Thank you.

16         MS. GROSSI:  Your Honor, I think we are of the view

17 that we should not be adding to the instructions at this point.

18 We gave these instructions, we agreed to these instructions,

19 and so pointing them back to these instructions would be

20 consistent with that.

21         THE COURT:  Well, I am definitely going to point them

22 back to the instructions.  I think what I am weighing now is

23 whether we should state -- because, again, they don't ask

24 whether there is an automatic inference.  They state that there

25 is and they want further clarification on the parameters of

1  that.  And while we often, again, try to stay within the

2  confines of the instructions, I guess I am not sure whether we

3  need to disabuse them of that notion.

4         MR. CRAWLEY:  Counsel for Mr. Scott Williams believes

5  we should, Your Honor.

6         MS. GROSSI:  And the government -- you know, I think

7  we might be taking the automatically out of context, but we

8  understand the Court's position.

9         THE COURT:  Give me your interpretation, when you are

10  saying it takes it out of context, what do you mean by that?

11         MS. GROSSI:  I think it could be just that the

12  quantity of drugs and, you know, that it's a large quantity of

13  drugs infers that the firearm is being used in furtherance of

14  drug trafficking and not necessarily meaning automatically

15  because if you think about -- I think in the instructions, it

16  says it would be highly unlikely that a person with 50,000

17  doses of a drug possessed them all for personal consumption,

18  and so I think that their interpretation of automatically could

19  be, yeah, it's obvious someone doesn't have 50,000 doses of a

20  drug for their own personal consumption.

21         THE COURT:  Well, I think the problem is as you have

22  -- I mean, what you are referring to is the instruction on what

23  is intent to distribute.  And the agent's testimony, I think it

24  was -- they said Agent Bush, was talking about how a certain

25  drug quantity basically means possession in his expert opinion

1  -- or intent to distribute.  And if someone said that's

2  automatic, that's not that far off, although it's clearly not

3  required, but that could be what they are talking about.  But

4  the idea that possession of a certain quantity, even a

5  distribution quantity, combined with possession automatically

6  infers use in furtherance, that's a different concept, which I

7  don't think the instructions bear out, and I don't think the

8  agent was trying to say that, and the government didn't even

9  try to argue that because it's certainly not automatic.

10        I mean, you could argue that under these facts, you can

11  reach that inference, but certainly not automatically.  And so

12  I think there is some concern that this is a misinterpretation

13  of the instruction, and so I think anything we say needs to

14  make pretty clear, either explicitly or implicitly, that that's

15  not accurate.  And I do think the primary instruction on this

16  is 83.

17        So I am going to suggest this, we say -- how does this

18  sound:  The law does not require an automatic inference as

19  described in the note.  You should consider the jury

20  instructions as a whole, including Instructions No. 83 and 90.

21  And I could sort of rewrite the exact language of the note.  I

22  just think that's probably not necessary, so that's why I say

23  "as described in the note."  And then referring to 83 and 90,

24  which is the in furtherance, I think it's helpful to direct

25  them to those because I think those are the ones that they

1  really want to look at.  This question really is about in

2  furtherance of drug trafficking.

3       I am telling them to look at all the instructions

4  entirely so that they still need to do that, but I think

5  without giving them any guidance when you are talking about 120

6  pages of instructions is not productive particularly since they

7  have to look at that one to get to this even if they are going

8  to look at other ones.  So that's my suggestion.

9       Any views on that?

10       MS. GROSSI:  Your Honor, I think it's important to

11  add 64 and 66 because the counts deal with drug trafficking,

12  the 924(c)s, and since the note is asking about the quantity of

13  the drugs, pointing to 64 and 66 I think is really important.

14       THE COURT:  I guess what I am wondering is -- I mean,

15  if we are talking about a drug trafficking crime, it's implicit

16  that they are finding there is intent to distribute.  They know

17  that.  There is a couple of instructions that say you can't

18  even get to these counts unless you find that there was a drug

19  trafficking crime.  So at that point, they have established

20  possession and intent to distribute.

21       I am not saying that they are not relevant.  I am

22  thinking about whether they should be emphasized or whether we

23  are pushing them off into another direction, but I don't know.

24       Any views from the defense on that?

25       MR. CRAWLEY:  Your Honor, on behalf of Mr. Scott

 1  Williams, my position on behalf of Mr. Williams would be that

 2  the Court, in instructing them to follow Instruction 90, is

 3  actually instructing them to follow 83?

 4          THE COURT:  Yeah.  It's just to be complete.

 5          MR. CRAWLEY:  And I understand.  We are not taking

 6  exception with that.  But we believe if that is the Court's

 7  intent to do that, that then that's where it should stop.

 8  That's all I was going to say, Your Honor, then that's where it

 9  should stop because, as the Court just touched upon, if you

10  read 90, 90 directs you to 83, so merely having you restate

11  that is not going to offer anything additional to that

12  proposition.  It tells them to do it as well.

13      But that being said, we disagree with the government as

14  to the other two instructions because, as the Court just

15  touched upon, it's inherent in the particular charges that if

16  that's what you are doing, that's what you are doing.

17      So we would just leave it at there is no law that goes to

18  that particular point that you asked the question about, and if

19  the Court is inclined to instruct on anything else, we would

20  ask the Court to limit it to what you just proposed, Your

21  Honor.

22          MR. GUILLAUME:  And Your Honor, on behalf of

23  Mr. Taeyan Williams, we share the view of co-counsel, but we --

24  and we do want to make clear for the record that we do object

25  to any additional instructions other than the I think it's 83

1    --

2              THE COURT:  83 and maybe 90, which is redundant.

3              MR. GUILLAUME:  Thank you.

4              THE COURT:  So, Ms. Grossi, this first half I have,

5    The law does not require an automatic inference as described in

6    the note.  I understand why you might not want it.  Do you

7    think there is anything incorrect about that statement?

8              MS. GROSSI:  No, Your Honor.  Are you putting that in

9    quotes, automatically infers, or --

10             THE COURT:  Well, as drafted, it says, "automatic

11   inference," so it's not a direct quote.

12             MS. GROSSI:  The government is fine with that, Your

13   Honor.  It is stating the law correctly.

14             THE COURT:  Okay.  Okay.  So what I will say is:  The

15   law does not require an automatic inference as described in the

16   note -- or in your note.  Maybe I will say that.  You should

17   consider the jury instructions as a whole, including

18   Instructions No. 83 and 90.

19        Any further objections?  Okay.  So we will send responses

20   back to those two notes and we will see where we are.  I noted,

21   although one never knows the ways of the jury, but these

22   questions are about -- the most likely interpretation is we are

23   talking about Counts Seven and Eight, so if, for some reason,

24   they are going in chronological order, they are moving along.

25   If they are not going in chronological order, I don't know, but

1   it may mean that we might hear further information this

2   afternoon.

3          Thank you very much.

4          (Recess taken from 1:32 p.m. until 3:38 p.m.)

5          THE COURT:  Thank you, everyone.  Please be seated.

6          So, welcome back, everyone.  We received a note stating,

7   "We, the jury, have concluded deliberations and have determined

8   a verdict on all counts for both Defendants Scott Anthony

9   Williams and Taeyan Raymond Williams."  So I believe we are

10  ready, then, to bring the jury in for the verdict.

11         Is there anything we need to discuss before that?

12         MS. GROSSI:  Not from the government.

13         MR. HAWKS:  No, Your Honor.

14         MR. GUILLAUME:  No, Your Honor.

15         THE COURT:  Okay.  So the only thing I would say

16  before we do that, because I think it's sometimes a little

17  difficult to say it after the verdict under whatever the

18  circumstances are, I just wanted to thank counsel for a well

19  tried case from both sides.  In my view, both sides were -- all

20  three sides, really, were well represented.  There was strong

21  advocacy on all sides, but fair advocacy, and the cooperation

22  among counsel was very favorable in a way that was good for the

23  efficiency of the Court but in no way impacted the strength of

24  everyone's position.  And I think that's something that good

25  counsel are always able to do, and these counsel did that, and

1  so I just want to thank counsel for a well tried case and let

2  you know I am happy to work with you again in the future.

3        And with that, we will bring in the jury.

4        MR. CRAWLEY:  Thank you, Your Honor.

5        (The jury panel enter the courtroom at 3:41 p.m.)

6        THE COURT:  Thank you, everyone.  Please be seated.

7        So I understand that the jury has reached a verdict in

8  this case.  Madam Clerk, you may begin with the roll call.

9        THE DEPUTY CLERK:  We are here to receive the verdict

10  in Criminal Action No. TDC-18-0631, United States of America

11  vs. Scott Anthony Williams and Taeyan Raymond Williams.

12        Members of the jury panel, when I call your juror number,

13  would you please stand and answer "present."

14        Juror No. 1.

15        A JUROR:  Present.

16        THE DEPUTY CLERK:  Juror No. 2.

17        A JUROR:  Present.

18        THE DEPUTY CLERK:  Juror No. 3.

19        A JUROR:  Present.

20        THE DEPUTY CLERK:  Juror No. 4.

21        A JUROR:  Present.

22        THE DEPUTY CLERK:  Juror No. 5.

23        A JUROR:  Present.

24        THE DEPUTY CLERK:  Juror No. 6.

25        A JUROR:  Present.

1          THE DEPUTY CLERK:  Juror No. 7.

2          A JUROR:  Present.

3          THE DEPUTY CLERK:  Juror No. 8.

4          A JUROR:  Present.

5          THE DEPUTY CLERK:  Juror No. 9.

6          A JUROR:  Present.

7          THE DEPUTY CLERK:  Juror No. 10.

8          A JUROR:  Present.

9          THE DEPUTY CLERK:  Juror No. 11.

10          A JUROR:  Present.

11          THE DEPUTY CLERK:  Juror No. 12.

12          A JUROR:  Present.

13          THE DEPUTY CLERK:  Members of the jury, have you

14  agreed on your verdict?

15       (The jury panel reply, "Yes.")

16          THE DEPUTY CLERK:  Who shall speak for you?

17          JURY FOREPERSON:  I will.

18          THE DEPUTY CLERK:  Will the foreperson please rise.

19      Has the verdict sheet which was submitted to the jury

20  been answered?

21          JURY FOREPERSON:  Yes.

22          THE DEPUTY CLERK:  Is the form signed and dated by

23  you?

24          JURY FOREPERSON:  Yes.

25          THE DEPUTY CLERK:  Please hand the verdict sheet to

1   me so I may present it to the judge.

2        THE COURT:  The verdict form is in order, so I will

3   ask you, Madam Clerk, to inquire.

4        THE DEPUTY CLERK:  As I read the questions, please

5   provide the answers.  Will the defendants please rise.

6        United States of America vs. Scott Anthony Williams and

7   Taeyan Raymond Williams, Criminal Action No. TDC-18-0631.

8   Verdict Form.  Count One:  Conspiracy to distribute and possess

9   with intent to distribute controlled substances.  Question 1:

10  As to Count One, conspiracy to distribute and possess with

11  intent to distribute controlled substances, how do you find the

12  defendant, Scott Anthony Williams?

13       JURY FOREPERSON:  Guilty.

14       THE DEPUTY CLERK:  As to defendant, Scott Anthony

15  Williams, do you find that the offense involved a mixture or

16  substance containing cocaine, a Schedule II controlled

17  substance?

18       JURY FOREPERSON:  Yes.

19       THE DEPUTY CLERK:  As to defendant, Scott Anthony

20  Williams, do you find that the offense involved a mixture or

21  substance containing marijuana, a Schedule I controlled

22  substance?

23       JURY FOREPERSON:  Yes.

24       THE DEPUTY CLERK:  As to Count One, conspiracy to

25  distribute and possess with intent to distribute controlled

```
 1  substances, how do you find the defendant, Taeyan Raymond
 2  Williams?
 3            JURY FOREPERSON:  Guilty.
 4            THE DEPUTY CLERK:  As to defendant -- excuse me.  As
 5  to the defendant, Taeyan Raymond Williams, do you find that the
 6  offense involved a mixture or substance containing cocaine, a
 7  Schedule II controlled substance?
 8            JURY FOREPERSON:  Yes.
 9            THE DEPUTY CLERK:  As to the defendant, Taeyan
10  Raymond Williams, do you find that the offense involved a
11  mixture or substance containing marijuana, a Schedule --
12            JURY FOREPERSON:  Yes.
13            THE DEPUTY CLERK:  -- I controlled substance?
14            JURY FOREPERSON:  Yes.
15            THE DEPUTY CLERK:  Count Two:  Conspiracy to
16  interfere with interstate commerce by robbery or extortion.
17       As to Count Two, conspiracy to interfere with interstate
18  commerce by robbery or extortion, how do you find the
19  defendant, Scott Anthony Williams?
20            JURY FOREPERSON:  Not guilty.
21            THE DEPUTY CLERK:  As to Count Two, conspiracy to
22  interfere with interstate commerce by robbery or extortion, how
23  do you find the defendant, Taeyan Raymond Williams?
24            JURY FOREPERSON:  Not guilty.
25            THE DEPUTY CLERK:  Count Three, Question Five:  As to
```

1   Count Three, interference with interstate commerce by robbery

2   or extortion, how do you find the defendant, Scott Anthony

3   Williams?

4            JURY FOREPERSON:  Not guilty.

5            THE DEPUTY CLERK:  As to Count Three of the

6   indictment, interference with interstate commerce by robbery or

7   extortion, how do you find the defendant, Taeyan Raymond

8   Williams?

9            JURY FOREPERSON:  Not guilty.

10           THE DEPUTY CLERK:  Count Four:  Kidnapping with death

11  resulting.  As to Count Four, kidnapping with death resulting,

12  how do you find the defendant, Scott Anthony Williams?

13           JURY FOREPERSON:  Not guilty.

14           THE DEPUTY CLERK:  As to the lesser-included offense

15  to Count Four, kidnapping, how do you find the defendant, Scott

16  Anthony Williams?

17           JURY FOREPERSON:  Not guilty.

18           THE DEPUTY CLERK:  As to Count Four, kidnapping with

19  death resulting, how do you find the defendant, Taeyan Raymond

20  Williams?

21           JURY FOREPERSON:  Not guilty.

22           THE DEPUTY CLERK:  As to the lesser-included offense

23  to Count Four, kidnapping, how do you find the defendant,

24  Taeyan Raymond Williams?

25           JURY FOREPERSON:  Not guilty.

1          THE DEPUTY CLERK:  Count Five:  Possessing, using,

2    carrying, and brandishing a firearm in furtherance of or during

3    and in relation to a crime of violence or a drug trafficking

4    crime.

5          As to Count Five, possessing, using, carrying, and

6    brandishing a firearm in furtherance of or during and in

7    relation to a crime of violence or a drug trafficking crime,

8    how do you find the defendant, Scott Anthony Williams?

9          JURY FOREPERSON:  Not guilty.

10          THE DEPUTY CLERK:  As to the lesser-included offense

11   to Count Five of possessing, using, or carrying a firearm in

12   furtherance of or during and in relation to a crime of violence

13   or a drug trafficking crime, how do you find the defendant,

14   Scott Anthony Williams?

15          JURY FOREPERSON:  Not guilty.

16          THE DEPUTY CLERK:  Question 10:  As to Count Five,

17   possessing, using, carrying, and brandishing a firearm in

18   furtherance of or during and in relation to a crime of violence

19   or a drug trafficking crime, how do you find the defendant,

20   Taeyan Raymond Williams?

21          JURY FOREPERSON:  Not guilty.

22          THE DEPUTY CLERK:  As to the lesser-included offense

23   to Count Five of possessing, using, or carrying a firearm in

24   furtherance of or during and in relation to a crime of violence

25   or a drug trafficking crime, how do you find the defendant,

1   Taeyan Raymond Williams?

2            JURY FOREPERSON:  Not guilty.

3            THE DEPUTY CLERK:  Count Six:  Possession with intent

4   to distribute controlled substances.

5        Question 11:  As to Count Six, possession with intent to

6   distribute controlled substances, how do you find the

7   defendant, Scott Anthony Williams?

8            JURY FOREPERSON:  Guilty.

9            THE DEPUTY CLERK:  As to the defendant, Scott Anthony

10  Williams, do you find that the offense involved a mixture or

11  substance containing cocaine, a Schedule II controlled

12  substance?

13           JURY FOREPERSON:  Yes.

14           THE DEPUTY CLERK:  As to the defendant, Scott Anthony

15  Williams, do you find that the offense involved a mixture or

16  substance containing marijuana, a Schedule I controlled

17  substance?

18           JURY FOREPERSON:  Yes.

19           THE DEPUTY CLERK:  As to Count Six, possession with

20  intent to distribute controlled substances, how do you find the

21  defendant, Taeyan Raymond Williams?

22           JURY FOREPERSON:  Guilty.

23           THE DEPUTY CLERK:  As to the defendant, Taeyan

24  Raymond Williams, do you find that the offense involved a

25  mixture or substance containing cocaine, a Schedule II

1   controlled substance?

2           JURY FOREPERSON:  Yes.

3           THE DEPUTY CLERK:  As to the defendant, Taeyan

4   Raymond Williams, do you find that the offense involved a

5   mixture or substance containing marijuana, a Schedule I

6   controlled substance?

7           JURY FOREPERSON:  Yes.

8           THE DEPUTY CLERK:  Count Seven:  Possession with

9   intent to distribute controlled substances.

10      As to Count Seven, possession with intent to distribute

11  controlled substances, how do you find the defendant, Scott

12  Anthony Williams?

13          JURY FOREPERSON:  Guilty.

14          THE DEPUTY CLERK:  What amount of a mixture or

15  substance containing a detectable amount of methamphetamine, a

16  Schedule II controlled substance, do you find that Scott

17  Anthony Williams possessed with the intent to distribute?

18          JURY FOREPERSON:  500 grams or more.

19          THE DEPUTY CLERK:  Count Eight:  Possession of a

20  firearm in furtherance of a drug trafficking crime.

21      As to Count Eight, possession of a firearm in furtherance

22  of a drug trafficking crime, how do you find the defendant,

23  Scott Anthony Williams?

24          JURY FOREPERSON:  Not guilty.

25          THE DEPUTY CLERK:  Count Nine:  Conspiracy to destroy

1   or conceal evidence.

2        As to Count Nine, conspiracy to destroy or conceal

3   evidence, how do you find the defendant, Scott Anthony

4   Williams?

5             JURY FOREPERSON:  Guilty.

6             THE COURT:  Thank you, Madam Foreperson.

7        Does any party request that the jury be polled?

8             MR. HAWKS:  No, Your Honor.

9             MR. GUILLAUME:  No, Your Honor.

10            MS. GROSSI:  No, Your Honor.

11            THE COURT:  Thank you.

12       Madam Clerk.

13            THE DEPUTY CLERK:  Members of the jury, you have

14   heard the verdict and answers thereto as delivered by your

15   foreperson and the verdict has been recorded, and do each of

16   you agree?  Please respond, "We do."

17       (The jury panel reply, "We do.")

18            THE DEPUTY CLERK:  Verdict recorded, Your Honor.

19            THE COURT:  The defendants may be seated.

20       So, ladies and gentlemen of the jury, this concludes your

21   jury service.  The last instruction I will give you is that you

22   are no longer instructed not to talk about the case.

23       Now, under our local rules, the parties and their

24   attorneys are not permitted to contact you to discuss the case.

25   You will not be asked to explain your verdict to them.  But if

1   you want to discuss your jury experience with your friends,

2   family, and others, you are free to do so.  I do ask that if

3   you choose to discuss the case, that you consider your fellow

4   jurors and the confidentiality of the jury deliberation process

5   and the need for jurors to feel comfortable stating their views

6   on a case in the jury room without concern that their views

7   will be broadcast to others or to the general public.

8        So one suggestion I have is that if you do discuss the

9   case with others, you refrain from repeating specific

10  statements made during deliberations or attributing statements

11  or views to your fellow jurors.

12       We do ask that you leave your notes and other materials

13  from the case behind you in the jury room.

14       And let me offer a final thank you on behalf of our

15  court.  As I stated at the outset of our trial, our

16  Constitution and our democratic system depend on citizens like

17  you serving as jurors to ensure that our justice system remains

18  in the hands of the people.

19       Interestingly enough, today, while you were deliberating,

20  I presided over a naturalization ceremony in the building for

21  new citizens, and I made the point that it's one of their

22  duties as new citizens to serve on juries if called upon, and

23  there is no better example of that than what you all have done

24  today.  So I want to thank you for that.  You have helped to

25  ensure that this important American tradition endures, and I

 1   can't thank you enough on behalf of our court.

 2        Because of the importance of your service to our court

 3   and our justice system, I would like to have the opportunity to

 4   thank you in person.  You are not required to wait for me, but

 5   if you don't mind waiting a few minutes while I finish any

 6   remaining business with the parties or the attorneys, I will

 7   come by the jury room to thank you.

 8        With that, the jury is discharged.

 9        (The jury panel exit the courtroom at 3:56 p.m.)

10             THE COURT:  Thank you, everyone.  Please be seated.

11        I do need to -- wait just a moment.  Make sure that the

12   government and both sides work with the clerk to make sure the

13   exhibits get returned.

14        And we are just looking to see if we can get some

15   sentencing dates.

16             THE DEPUTY CLERK:  Sure.  August 10th, nine a.m.

17             MR. GUILLAUME:  I'm sorry.  Is this for both or just

18   --

19             THE DEPUTY CLERK:  For both.

20             MR. GUILLAUME:  Your Honor, I am in a month-long

21   trial starting August 9th.  I am available the 7th and 8th if

22   the Court is available.

23             MR. CRAWLEY:  Your Honor, on behalf of Mr. Scott

24   Williams, I don't know that both counsel are necessary.  I

25   start a trial in the Eastern District of Virginia the first

1  week of August, and I have a plea that's -- I think it's going

2  to resolve itself, so I will do my best to be here on that date

3  if the Court wishes to sign it.  But if the Court is inclined

4  to let Mr. Hawks appear without me -- he was the lead attorney,

5  the first attorney -- I think he can handle it, I think he

6  would handle it without me, but I just wanted to let the Court

7  know my schedule.

8       I hope to have that case resolved with a signed plea

9  document by tomorrow.  The Court understands that I said I had

10  some other matters that I was trying to deal with tomorrow.

11  That is one of the matters.  So hopefully I will have a

12  signature on that document.

13          THE COURT:  So, first of all, I think one way to

14  possibly sort this out is we don't need to necessarily have to

15  do them on the same day, so does that help in terms of,

16  Mr. Guillaume, your schedule?

17          MR. GUILLAUME:  Yes, Your Honor.  I do -- like I

18  said, the month of August is completely booked.  Other than the

19  7th -- actually, the 8th may be booked as well.  I have a

20  pretrial that may go a while.  But in the same vein as

21  Mr. Crawley, if Mr. Nieto -- I'd like to be here, but if -- I

22  don't want to hold things up, so if Mr. Nieto can handle it by

23  himself --

24          THE COURT:  Well, I mean, I'd like to get a date

25  where all of you can be here, partly because you were

1  participants in the trial, but also since everyone seems to be

2  willing to just have one attorney, it's sort of more likely not

3  to create an issue if we have a date that initially both sides

4  -- all attorneys can make, and then if something comes up, we

5  can still go forward.  If we are relying just on one attorney,

6  then --

7              MR. GUILLAUME:  Is the Court available on the 7th,

8  Your Honor?

9              THE COURT:  You tell me.  Well, let's do Monday,

10 August 7th, at 2:00.

11             MR. GUILLAUME:  Thank you, Your Honor.

12             THE COURT:  That will be for Taeyan Williams.  Does

13 that work for you, Mr. Nieto?

14             MR. NIETO:  Yes.  Thank you.

15             THE COURT:  The government?

16             MS. GROSSI:  Your Honor, our case agent is not

17 available that day.  He's been on the case for five years, so

18 we would like to have him there.

19             THE COURT:  Okay.  Would the -- was the 9th an option

20 for the other team, for the Scott Williams team?

21             MR. HAWKS:  That should work.

22             THE COURT:  Is that the day that you were talking

23 about?

24             MR. CRAWLEY:  No, the first week of August.  I

25 couldn't remember what date you were saying.  I expect to be

1   done in Virginia, even if we have a trial, by the 9th.  I

2   apologize if I misunderstood.

3           MR. HAWKS:  Your Honor, I am also available on the

4   9th.

5           THE COURT:  Is that any different or is it the same?

6           MS. GROSSI:  Your Honor, our case agent is scheduled

7   for a trial that whole week, the 7th through the 11th.

8           THE COURT:  Well, what about after the 11th?

9           MS. GROSSI:  We are available the week of the 21st,

10  Your Honor, of August.

11          THE COURT:  The 21st, that week -- no.  How does

12  August 22nd work?

13          MS. GROSSI:  That works for the government.

14          MR. GUILLAUME:  Your Honor, I am supposed to be in

15  trial, but this trial is scheduled for a month.  I don't know

16  that it will really go a month.  If I may have the Court's

17  permission to have Mr. Nieto appear?  If I am still in trial, I

18  wouldn't appear, although I do want to be here for my client.

19          THE COURT:  Well, what if we did the 23rd, would that

20  help?

21          MR. GUILLAUME:  The trial is scheduled to last from

22  August 8th to September 8th.  It's a five co-defendant trial in

23  D.C. federal court.  I don't think it's going to last that

24  long, but, again, I have been wrong.

25          THE COURT:  What if we did the 22nd for Scott

1  Williams and the 23rd for Taeyan Williams, does that work?

2          MR. NIETO:  Forgive me, Your Honor.  I have

3  sentencing in Baltimore on the 23rd.  In fairness, that's at

4  ten a.m., so if Your Honor had availability in the afternoon,

5  I can be here.

6          THE COURT:  How does that week work for the

7  government?

8          MS. GROSSI:  Those dates work, Your Honor.

9          THE COURT:  Why don't we do 9:30 on the 22nd for

10  Mr. Scott Williams and 2:00 on -- or 2:30 on the 23rd for

11  Taeyan Williams.  That gives Mr. Guillaume an extra day, if

12  necessary.  And Mr. Nieto, that's okay for you?

13          MR. NIETO:  Absolutely, Your Honor.

14          THE COURT:  And the government is okay with that?

15          MS. GROSSI:  That works, Your Honor.

16          MR. GUILLAUME:  Thank you, Your Honor.

17          THE COURT:  Any other business we need to discuss

18  today?

19          MR. HAWKS:  Your Honor, as the -- the charges with

20  the most significant punitive exposure are no longer before

21  defendant, Scott Williams, he wanted to inquire whether or not

22  the government seeks his continued detention before sentencing.

23          MS. GROSSI:  We do, Your Honor.

24          THE COURT:  Well, I mean, the conviction includes

25  possession with intent to distribute controlled substances,

1  including cocaine.  Under 18, U.S.C., 3143, there is not just a

2  presumption, but the Court shall detain, absent exceptional

3  circumstances which could be found under 18, U.S.C., 3145, but

4  I am not going to find exceptional circumstances in this case

5  on that basis.  And I think there is also -- is there a

6  mandatory minimum for 500 grams?

7          MS. GROSSI:  There is.  There is a ten-year mandatory

8  minimum, Your Honor.

9          THE COURT:  But even without that, I think just the

10  statute doesn't permit me to release on this type of conviction

11  absent exceptional circumstances, and I am not going to find

12  those under these circumstances, but I certainly understand the

13  request.

14          MR. HAWKS:  Thank you, Your Honor.

15          THE COURT:  So the defendants will be remanded back

16  to the custody of the marshals pending sentencing.

17      Anything else we should discuss while we are here today?

18          MS. GROSSI:  Nothing further, Your Honor.

19          MR. GUILLAUME:  Nothing further, Your Honor.

20          THE COURT:  Thank you all very much.

21          MR. CRAWLEY:  Thank you, Your Honor.

22      (The proceedings were concluded at 4:05 p.m.)

23

24

25

1                      C E R T I F I C A T E

2

3              I, Renee A. Ewing, an Official Court Reporter

4    for the United States District Court for the District of

5    Maryland, do hereby certify that the foregoing is a true and

6    correct transcript of the stenographically reported proceedings

7    taken on the date and time previously stated in the above

8    matter; that the testimony of witnesses and statements of the

9    parties were correctly recorded in machine shorthand by me and

10   thereafter transcribed under my supervision with computer-aided

11   transcription to the best of my ability; and that I am neither

12   of counsel nor kin to any party in said action, nor interested

13   in the outcome thereof.

14

15

16            /s/ Renee A  Ewing

17            Renee A. Ewing, RPR, RMR, CRR
              Official Court Reporter
18            September 29, 2023

19

20

21

22

23

24

25